UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | . | Case No. 1-22-42104(ESS) |
| | . | |
| 129 N. WALNUT STREET, LLC, | . | |
| | . | |
| Debtor. | . | |
| . . . . . . . . . . . . . . | . | |
| 129 N. WALNUT STREET, LLC, | . | Adv. No. 1-23-01045(ESS) |
| | . | |
| Plaintiff, | . | |
| v. | . | |
| | . | |
| RIVERSIDE ABSTRACT, LLC, | . | |
| | . | |
| Defendant. | . | |
| . . . . . . . . . . . . . . | . | |
| 129 N. WALNUT STREET, LLC, | . | Adv. No. 1-22-01089(ESS) |
| | . | |
| Plaintiff, | . | |
| v. | . | |
| | . | Conrad B. Duberstein U.S. |
| BASIS MULTIFAMILY FINANCE | . |   Courthouse |
| I, LLC; OLD REPUBLIC | . | 271-C Cadman Plaza East |
| NATIONAL INSURANCE | . | Brooklyn NY 11201 |
| COMPANY, | . | |
| | . | |
| Defendants. | . | July 12 2024 |
| . . . . . . . . . . . . . . | . | 1:14 p.m. |

TRANSCRIPT OF [23] ADJOURNED CASE MANAGEMENT CONFERENCE; [164]
ADJOURNED HEARING ON DISCLOSURE STATEMENT; [194] MOTION TO
COMPEL BASIS TO PRODUCE DOCUMENTS; [43] ADJOURNED MOTION TO
DISMISS CASE; ADJOURNED PRE-TRIAL CONFERENCE; [9,21] ADJOURNED
MOTION TO DISMISS ADVERSARY PROCEEDING; [26] ADJOURNED MOTION
TO DISMISS BOTH CROSS CLAIMS

BEFORE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Operator:                    Sheree Jackson

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609) 586-2311       Fax No. (609) 587-3599**

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the 129 N. Walnut Street, LLC: | Law Offices of Isaac Nutovic<br>By:  ISAAC NUTOVIC, ESQ.<br>261 Madison Avenue, 26th Floor<br>New York, NY 10016 |
| For Basis Multifamily Finance I, LLC: | Sills Cummis & Gross, P.C.<br>By:  GREGORY A. KOPACZ, ESQ.<br>     S. JASON TEELE, ESQ.<br>     MARK E. DUCKSTEIN, ESQ.<br>1 Riverfront Plaza<br>Newark, NJ 07102 |
| For Old Republic National Title Insurance Company: | Herrick, Feinstein LLP<br>By:  LEAH KELMAN, ESQ.<br>1 Gateway Center, Suite Floor 22<br>Newark, NJ 07102 |
| For Samuel Rosenbaum: | Norris McLaughlin, P.A.<br>By:  MELISSA A. PENA, ESQ.<br>7 Times Square<br>New York, NY 10036 |
| For Riverside Abstract, LLC: | Rivkin Radler LLC<br>By:  LAWRENCE S. HAN, ESQ.<br>926 RXR Plaza<br>Uniondale, NY 11556 |
| For U.S. Trustee: | Office of the United States Trustee<br>By:  SHANNON A. SCOTT, ESQ.<br>United States Federal Building<br>New York, NY 10014 |

- - -

1          THE COURT:  All right, Ms. Jackson, let's call the

2  next matter.

3          COURTROOM DEPUTY:  Calling the matters of 129 North

4  Walnut Street, LLC, 22-42104, Matters 9 through 16 on the

5  calendar, including Adversary 22-1089 and 23-1045.

6          Connected, Isaac Nutovic, Gregory Kopacz, Jason

7  Teele, Mark Duckstein, Tammy Jones, Richard Cadigan, Kunle

8  Shoyombo, Leah Kelman, Melissa Pena, Lawrence Han, Shannon

9  Scott.

10          If the parties could please remember to state your

11  name each time before speaking.

12          THE COURT:  I guess I'll begin with just saying good

13  afternoon.  Hi, everybody.  I miss seeing you in person, but

14  I'm glad to see you in the video and I hope it was a

15  convenience to the parties.  It does limit a tiny bit what

16  we'll do today, but hopefully we'll still make lots of good

17  progress.

18          Mr. Nutovic, for the debtor.

19          MR. NUTOVIC:  Good afternoon, Your Honor.  Isaac

20  Nutovic, counsel for the debtor.

21          THE COURT:  All right.  Thank you.  And, Mr. Kopacz,

22  Mr. Teele, Mr. Duckstein for Basis Multifamily Finance.

23          MR. TEELE:  Good afternoon, Your Honor.  Jason Teele,

24  Greg Kopacz, and Mark Duckstein of Sills, Cummis & Gross on

25  behalf of Basis.

1          THE COURT:  Thank you.  For, I'm sorry, there are

2  several others as well that are the representatives, Ms. Jones,

3  Mr. Cadigan, and Kunle Shoyombo.

4          And, Mr. Hyman, I'm glad to have you here.

5          Ms. Kelman, for Old Republic.

6          MS. KELMAN:  Good afternoon, Your Honor.  Leah

7  Kelman, Herrick Feinstein for Old Republic.

8          THE COURT:  Thank you, Ms. Kelman.

9          Ms. Pena, for Mr. Rosenbaum.

10          MS. PENA:  Good afternoon, Your Honor.  Melissa Pena

11  from the law firm Norris, McLaughlin on behalf of Samuel

12  Rosenbaum.

13          THE COURT:  All right.  Thank you.  Mr. Han,

14  Riverside Abstract.

15          MR. HAN:  Good afternoon, Your Honor.  Lawrence Han

16  from Rivkin Radler appearing for Riverside Abstract.

17          THE COURT:  And Ms. Scott for the Office of the

18  United States Trustee.

19          MS. SCOTT:  Good afternoon.  Shannon Scott for the

20  U.S. Trustee.

21          THE COURT:  All right, thank you all.

22          We have a number of matters on the calendar and a

23  number of recent filings on the docket in the Chapter 11 case

24  of 129 North Walnut.

25          We have, of course, case management.  We're going to

1  start there.

2          We have the carried hearing on the disclosure

3  statement, we have some discovery matters, we have the motion

4  to dismiss this Chapter 11 case, I have some thoughts about

5  that, we have a pretrial conference in the adversary proceeding

6  against Riverside and also against separately Basis

7  Multifamily, and some motion practice there, also on the docket

8  today.

9          So, I'd like to make the progress we can,

10 understanding that we don't take argument on the video.  But we

11 do make progress and you just saw that in the last matter where

12 I think we made some very significant progress.  I aspire to do

13 the same here as well.

14         Let's begin with case management.  Over to debtor's

15 counsel, Mr. Nutovic, how's it going?

16         MR. NUTOVIC:  Good afternoon, Your Honor.  The

17 operations of the debtor are doing very well.  They continue to

18 operate profitably.

19         The monthly operating reports were behind in one

20 month and I believe that the fees were just taken care of

21 recently.

22         I know that there was some issue about the insurance.

23 I have seen a payment for the insurance, but I think the U.S.

24 Trustee is looking for a final document with respect to that.

25 I believe everything is in order with respect to that.

1          THE COURT:  All right.  And is it the property

2  insurance or is it liability insurance?

3          MR. NUTOVIC:  I am not sure, Your Honor.  I think

4  it's both, but, I think it's both.

5          THE COURT:  When can we look forward to --

6          MR. NUTOVIC:  I believe it's been taken care of.  I

7  have seen a payment information with respect to that so I

8  believe it's been taken care of.

9          THE COURT:  Okay.  All right.  I see that we have

10 April but we're waiting for May on those monthly operating

11 reports.  Do you think a week gives you enough time to get that

12 on file?

13         MR. NUTOVIC:  That would be fine, Your Honor.

14         THE COURT:  All right.  That's July 19th, 2024.

15 Otherwise, you know, this is a 2022 case so the basics are, I'm

16 sorry, basics was probably not the best way to put that with

17 Basis as a party, but the case is otherwise administratively,

18 you know, retentions are in place, bar dates are long set,

19 things like that.

20         There's things happening here, there's things

21 happening in New Jersey, including going back over my hearing

22 notes from as far back as May, there was a process underway, a

23 dispute resolution process with Justice, retired Justice

24 Ciuffani in New Jersey.  I'm interested to know whether there's

25 anything going on there and really to make the path forward

1  here that helps us resolve this case.

2      So, the same with case management.  Let's hear from
3  Ms. Scott.  Anything to add?

4      MS. SCOTT:   Shannon Scott for the U.S. Trustee.
5  Your Honor, that's correct, the May monthly operating report is
6  outstanding.

7      I do have that there are $806 in U.S. Trustee fees,
8  but if the payment was just made it might not have posted.

9      And both, yes, the insurance, the umbrella and the
10 liability, we just need proof of renewal.  I mean if it's been
11 renewed, that's fine.  If they could just send over the
12 paperwork, let us have that information, that would be great.

13     And I have nothing further.

14     THE COURT:  All right.

15     MS. SCOTT:  Thank you.

16     THE COURT:  Thank you.  So, Mr. Nutovic, if I can add
17 current on UST fees and evidence or proof of renewal of the
18 insurance all by July 19th, that will check those boxes and
19 keep the case in good administrative shape.  Can you do that?

20     MR. NUTOVIC:  Isaac Nutovic.  Your Honor, that would
21 be fine.  Yes, we will be able to handle that.

22     THE COURT:  All right.  Thank you.  Let's hear from
23 the creditor.  Staying with case management.  I know there's
24 lots  more to talk about.  Mr. Teele, what would Basis
25 Multifamily like to bring to the Court's attention and the

1  parties' attention?  Any questions you'd like to ask about the

2  status of the case, things like that?

3          MR. TEELE:  Your Honor, Jason Teele.  Thank you.

4  With regard to purely status matters, I have nothing to add

5  other than my client is entitled to and would like to receive

6  proof of insurance renewal that might have been submitted to

7  the U.S. Trustee as well.

8          As you mentioned there are other matters, discovery

9  issues, issues regarding the adversary proceeding, that I would

10 like to be heard on when we get to that.

11         THE COURT:  It's a good sign about insurance.  I'll

12 add that to my direction to the debtor to provide proof of

13 renewal.  Would providing that to you or to your colleagues,

14 Mr. Teele, be the right way to do that?

15         MR. TEELE:  Yes, Your Honor.

16         THE COURT:  All right.  Anything further on status,

17 Mr. Teele, or colleagues?

18         MR. TEELE:  On the status of the Chapter 11 case I

19 believe (indiscernible).

20         THE COURT:  Okay.  All right.  Good to know.  For Old

21 Republic on status.  Ms. Kelman, anything to add?

22         MS. KELMAN:  Nothing on status of the main bankruptcy

23 case.

24         THE COURT:  All right.  Same question, Ms. Pena, for

25 Mr. Rosenbaum?

1    MS. PENA:  Nothing to add, Your Honor.

2    THE COURT:  And same question for Mr. Han for

3 Riverside Abstract?

4    MR. HAN:  Same answer, Your Honor, nothing to add.

5    THE COURT:  All right.  Thank you.  Same question,

6 same answer.

7    Mr. Nutovic, is there anything to do today on the

8 question of the disclosure statement?  I'm guessing that until

9 we can get a little further down the road, it's probably not

10 time to spend more time on that, but I wanted to ask.

11    MR. NUTOVIC:  Your Honor, my recollection is that

12 Your Honor had closed progress towards the confirmation hearing

13 until you heard the motion to dismiss.  I still maintain that

14 the issues overlap substantially.  It would be more efficient

15 to do them together.  And I know it's Your Honor's call, but if

16 Your Honor wants to revisit that I'd be happy to talk about it.

17 Because I do believe that the issue of the debtor's ability to

18 confirm a plan in this case is going to be heard in detail on

19 the hearing on the motion to dismiss.

20    THE COURT:  All right.

21    MR. NUTOVIC:  But I think it would be more efficient

22 to hold them together.

23    THE COURT:  All right.  The next matter on the

24 calendar just going down the list which I think follows the

25 docket in the bankruptcy case is the motion to compel.  I've

1  had that motion to compel on our first hearing calendared on my

2  docket since January 3rd, 2024.  Is there relief that you

3  continue to seek in respect of that motion?  Mr. Nutovic, it's

4  your motion.

5         MR. NUTOVIC:  Your Honor, I don't presently have such

6  relief.  But we had issues with documents being turned over to

7  us, they were deliberately withheld, and they are -- the

8  discovery was in the context of the motion to dismiss.

9         So, if we again find out that there were other

10 documents that were not produced, I would not like to have to

11 start a new motion to compel.

12        THE COURT:  Well I can appreciate that.  At the same

13 time for a discovery issue to move to the point of motion to

14 compel requires the Court and the parties to address the

15 specific issues presented there.

16        I'm inclined to think at this point since no further

17 relief is sought there, though of course I'm looking at my

18 rules, the discovery rules are what they are and the discovery

19 obligations are what they are.  This could be at this stage in

20 these proceedings marked off without prejudice, understanding

21 that you're not done with needing information, nobody in this

22 case is done with needing information, but it seems to me that

23 the purpose of that motion may have been fully addressed.

24        And the subject matter as far as I could tell as I

25 was preparing for today, you know it was months ago, six months

1 ago we had our first hearing, more than, and it could be

2 restored to the calendar, it's certainly without prejudice if

3 there are more discovery disputes, but that's how I'm inclined

4 to proceed with respect to the debtor's motion to compel.  Just

5 to let you know.

6 　　　　　MR. NUTOVIC:   Your Honor, to do that without

7 prejudice, I won't have an objection.

8 　　　　　THE COURT:  All right.  So, that's marked off without

9 prejudice and so ordered, and that will be explicit in the

10 docket entry.

11 　　　　　The next matter on, and the only other matter really

12 on the Court's calendar in the bankruptcy case is that motion

13 to dismiss and I think the parties will probably take the

14 position that they've argued it and argued it and argued it.

15 It was first here before me on November 3rd of 2022.  A long

16 time ago my friends.

17 　　　　　And I kind of have the same question as I did with

18 the discovery.  Mr. Kopacz, I think your name is attached to it

19 in the docketing.  Mr. Teele, I know you often take the lead.

20 Who would like to bring the Court up to date as to the status

21 of Basis Multifamily's motion to dismiss?

22 　　　　　MR. TEELE:  I will, Your Honor.

23 　　　　　THE COURT:  Thank you.

24 　　　　　MR. TEELE:  So the status of the motion to dismiss is

25 we have completed discovery.  We have, and I know Mr. Nutovic

1  submitted a letter yesterday regarding that, we have submitted

2  to the Court our joint pre-hearing statements identifying

3  witnesses and exhibits.  And as you might recall we did file an

4  amended joint pretrial --

5              THE COURT:  That's right.

6              MR. TEELE:  -- memorandum after Your Honor had given

7  us some instructions to do so.

8              THE COURT:  That's correct because you had --

9              MR. TEELE:  And --

10             THE COURT:  Yes.  Because the parties had neglected

11 to follow the direction in the Court's order as to what needed

12 to be included.  And I don't mean that in a critical way, it's

13 just a fact.  But I do recall that.

14             MR. TEELE:  And I believe --

15             THE COURT:  What number in the docket was that?

16             MR. TEELE:  And I believe -- give me a second and I

17 will find it.

18             THE COURT:  I'm sorry.  That was an unfair question.

19 Let me apologize on the record.  I'm looking at my docket.

20             MR. TEELE:  I haven't found it yet.  I have it right

21 in front of me.  But I believe we rectified the deficiencies

22 with that submission.

23             THE COURT:  Yes.

24             MR. TEELE:  With the amended submission.  And we are

25 at a stage now where we are waiting for Your Honor to tell us

1    when we can conduct our evidentiary hearing.

2            THE COURT:  Okay.

3            MR. TEELE:  I believe that the parties are estimating

4    that we could use somewhere between one and two trial days.  It

5    could be a little shorter than that, but I think

6    (indiscernible) absolutely collectively need from the Court.

7            But I think that's, other than Mr. Nutovic's issues

8    regarding the discovery for that motion, I think all we're

9    waiting for at this point is an evidentiary hearing.

10           THE COURT:  Okay.  Super helpful.  All right.  So,

11   you have a big team.  Would anyone like to add anything to what

12   Mr. Teele has just summarized on the record?  It's very helpful

13   to me.

14           MR. NUTOVIC:  Your Honor, this is Isaac Nutovic.

15           THE COURT:  Yes, that would be for Mr. Teele's side

16   of the motion.

17           MR. NUTOVIC:  Oh, okay.

18           THE COURT:  Nothing further.  Mr. Nutovic, over to

19   you.  The debtor is the subject of the motion to dismiss of

20   course.  Anything to add from the debtor's perspective?

21           MR. NUTOVIC:  Yes.  Mr. Teele had mentioned that I

22   submitted a letter on the record which related to a conference

23   request I made back in April.

24           I have discovered through the process of going

25   through the pre-hearing statements that Mr. Teele was planning

1  on presenting evidence which was surprising to me.  And I had

2  asked Your Honor to reopen discovery or else limit Mr. Teele's

3  ability to introduce this new evidence.

4       Mr. Teele had represented that the information that

5  he wanted to present to the Court that was resulted from

6  information that had become available to him after the motion

7  had been filed and I think that doesn't take away from the

8  surprise to me as to the issue being presented.

9       And I did ask Your Honor to reopen discovery.  I did

10  not to my recollection get a ruling from you on the subject.

11  It was not ordered in the docket.

12       THE COURT:  I saw that in your letter and the point

13  was well-taken.  So, have the parties had an opportunity to

14  confer on what that discovery might look like and how fast you

15  could do it?

16       MR. TEELE:  Sure.  Before I answer that

17  (indiscernible) --

18       THE COURT:  Well, let's stay with my question,

19  please.

20       MR. TEELE:  So, we have not conferred on what that

21  would look like.  However, I think the (indiscernible) question

22  which is --

23       THE COURT:  Well, actually that was the question to

24  Mr. Nutovic.  But if you confer with him, then I guess it's the

25  same answer.

1          Mr. Nutovic, may I hear from you, what is the --

2    you've indicated you think there would be more discovery and I

3    saw this in your letter and the reference to April and even the

4    quote from the record.  And that letter may be on my desk in

5    chambers, not on my bench here in the courtroom.

6          But tell me what, as specifically as possible, tell

7    me what you think you need in order to be adequately prepared

8    to respond to the motion to dismiss.

9          MR. NUTOVIC:  Thank you, Your Honor.  Isaac Nutovic

10   for the debtor.

11         Specifically there were surprise witnesses on this

12   particular point.  They are third parties.  I would like to

13   depose them and serve discovery on them.  I don't think it

14   should take more than 60 days, Your Honor.

15         THE COURT:  I'm sorry, 60 days?  I was thinking about

16   giving you a week.

17         MR. NUTOVIC:  Your Honor, I don't mind serving my

18   documentation and requests in that period of time.  I can do

19   that quickly.

20         THE COURT:  And who are --

21         MR. NUTOVIC:  It's just a question of whether I'll

22   get a hold of them.

23         THE COURT:  I'm sorry.  Who are the surprise

24   witnesses?

25         MR. NUTOVIC:  They are the individuals that owned the

1  property at the time of the acquisition with Mr. -- for Mr.

2  Rosenbaum and the individuals that had -- his father-in-law and

3  his brother-in-law would be named as witnesses in the pre-

4  hearing statement.

5           THE COURT:  All right.  And since it was a joint pre-

6  hearing statement, upon the joint filing of the joint statement

7  you would have been aware of that, right?

8           MR. NUTOVIC:  And that's what I protested, Your

9  Honor.

10          THE COURT:  Okay.

11          MR. NUTOVIC:  I brought that to the Court's attention

12 in April.

13          THE COURT:  I see.

14          MR. NUTOVIC:  It's a long time ago.

15          THE COURT:  All right.  Relatively speaking.  And is

16 that your letter at Number 237 on the docket?  I'm sorry.

17 Number 238 on the docket I think, is that correct?

18          MR. NUTOVIC:  I don't have that, Your Honor.  But the

19 initial letter was I believe 223.

20          THE COURT:  Okay.

21          MR. NUTOVIC:  That's the first time I brought it to

22 the Court's attention.

23          THE COURT:  All right.  I'm not inclined to cut off

24 anybody's discovery here.  I'm just not.  That would be a

25 problem in the record that nobody needs and the issues are too

1  important.  So, if there are unexpected witnesses and you want

2  to discover, whether expected or unexpected, it's up to the

3  Court whether discovery, whether a very defined specific period

4  of discovery makes sense.

5          I now have the letter.  Thank you, Ms. Jackson.  Not

6  just on my screen, but in front of me.

7          So, Mr. Nutovic, Basis is looking for information,

8  the debtor is looking for information.  It would be consistent

9  with the approach that these are significant matters to your

10 respective clients.  The clients are well represented by able

11 counsel, and I generally let counsel both prepare and try the

12 case.

13         So, I think perhaps I need to hear or you need to

14 hear from each other, and I may give you a moment to do this

15 right now, as specifically as possible what you need and how

16 much time you need to get it.  And this is not an invitation to

17 revisit everything.  There needs to be specificity and I see

18 that in the request, or the descriptions of the request.

19         I would need you to do this promptly.  And I have

20 been trying as hard as I can to respect the summer schedules of

21 parties and counsel and I would urge you similarly to respect

22 them.

23         It sounds like and seems like as I look at the

24 descriptions that this would be directly relevant to the motion

25 to dismiss evidentiary hearing.  Mr. Nutovic, from your

1  perspective, is that correct?

2          MR. NUTOVIC:  The discovery I'm seeking would be

3  relevant based upon the issue that Mr. Teele has raised.

4          THE COURT:  All right.  And, Mr. Teele, the same

5  question as to the information that you're seeking concerning

6  books and records.  I'm not looking at your description just to

7  be clear.  And I apologize if I get some things slightly wrong.

8  But this would be from your, Mr. Teele, from your June 9th

9  letter, June 19th letter, I'm sorry, Ms. Pope, would that also

10 be pertinent to the motion to dismiss evidentiary hearing?

11         MR. TEELE:  It would be, Your Honor.

12         THE COURT:  All right.  So --

13         MR. TEELE:  And in addition to the third party

14 witnesses that Mr. Nutovic mentioned.

15         THE COURT:  All right.  I'm going to send you into

16 the conference room, except I'm doing it on Zoom.  You need to

17 address -- understand that I am inclined to give the parties

18 the opportunity to take the discovery they believe is necessary

19 to that motion to dismiss, but to do so as promptly as

20 possible.

21         And if you can get it done in, well depending on how

22 quickly you can get it done, then to be setting a very prompt

23 date thereafter for an amended, further amended joint

24 pre-hearing statement and a hearing date as soon thereafter as

25 it makes sense.

1    But I mean I can give you a date and you can work
2  backwards or you can tell me what the time is that you need to
3  do that and then we'll work forwards.  I'm, again out of
4  respect for counsel, I'm going to at least begin that second
5  way and I think this is actually one of the more important
6  things we need to do today.  You will have a schedule by the
7  time we're done, whether I give it to you or you set it
8  yourselves so, or propose it yourselves.  So, be thinking about
9  that.

10    MR. CADIGAN:  Your Honor, this is Rich Cadigan for
11  Basis.

12    THE COURT:  I'd like to hear in the context of the
13  motion to dismiss from counsel for Old Republic.  I'd like to
14  hear from counsel for Old Republic on the question of the
15  motion to dismiss.

16    MS. KELMAN:  Good afternoon, Your Honor.  The motion,
17  Old Republic doesn't have a view on Basis' motion to dismiss.
18  Obviously we have two motions to dismiss pending of our own.

19    The only thing that I raised in my letter was Basis'
20  is pressing us for discovery.  We're asking the Court to
21  revisit that decision which the Court already made and, well
22  Basis and debtor in a joint letter, and I submitted the
23  response that they're not being exchanged vis-a-vis our pending
24  motions to dismiss.  They remain pending and the Court, there's
25  no reason for the Court to revisit that should the Court

1 sustain the claims, we'll proceed with discovery.  And should

2 the Court not sustain the claims, we'll have no reason to do

3 all that work and it's not in the interest of judicial economy.

4          And I think that since Basis is advocating for the

5 whole bankruptcy case to be dismissed, it's kind of talking out

6 of two sides of their mouth because it's discovery against us.

7          THE COURT:  So, those motions to dismiss, just for

8 the sake of a clear record, and the adversary proceeding is not

9 the bankruptcy case and the point you make --

10          MS. KELMAN:  The one against us, right.

11          THE COURT:  And so motion to dismiss adversary

12 proceeding defendant Old Republic 9 and 21 in the docket of 22-

13 1089 and then with respect to the cross claims also.

14          All right.  If we don't have a bankruptcy case, we

15 don't have adversary proceedings.  If we have a motion to

16 dismiss that's granted, we don't have a bankruptcy case.

17          I guess the thing I struggle with and really came

18 home to me quite substantially as I was working through this

19 very large record last night to prepare for today, is that we

20 really need to get that question decided and it's not a legal

21 question only.

22          The parties dispute facts and want to put a record

23 before the Court and now you have requested additional

24 discovery to do that, each of you in substance has done that,

25 and I'm inclined to allow it.  I don't want to hear at the end

1    of the evidentiary record that you were somehow forestalled

2    from putting in your case because discovery was inappropriately

3    truncated.

4           And I'm mindful of the relatively broad approach to

5    discovery under the rules and here in the Circuit and so that's

6    why we're now going to take a, we can take a few minutes and

7    you're going to confer on a schedule, or if you cannot reach

8    agreement, I will give you a schedule when I come back on when

9    I guess you would serve the supplemental requests and then

10   respond and then we would come back and at that point set a

11   date for a revised pre-hearing order and trial dates so.

12          MR. TEELE:  According to clarification before we go

13   into the private conference.

14          THE COURT:  Yes, Mr. Teele.

15          MR. TEELE:  If I may.

16          THE COURT:  Please proceed.

17          MR. TEELE:  I just want to confirm, I just wanted to

18   clarify that the additional discovery that we're talking about

19   is mutual.  The debtors -- the debtor would send discovery to

20   (indiscernible).

21          THE COURT:  So far as I can tell. you're each

22   requesting things, but I need both clarity and finality on

23   that, and that's what you'll be talking about.  So. yes, I

24   think that's absolutely right and I'm grateful for the chance

25   to clarify that.

1          MR. TEELE:  Thank you for clarifying.

2          THE COURT:  We need to be done.  You need it even

3   more than I do, but at this point I do as well.  So, all right,

4   we'll take a second call.  I will invite you to advise Ms.

5   Jackson who should be in the room to confer on that.

6          Again, if you were here in person I would be

7   literally sending you to that conference room, so imagine

8   that's where you are, all right?  And I'll be back as soon as

9   Ms. Jackson tells me it's appropriate to be back.  Thank you so

10  much.

11         COURTROOM DEPUTY:  I'll stop the recording.  One

12  moment, please.

13                        (Off the record)

14         COURTROOM DEPUTY:  Recalling all matters regarding

15  129 North Walnut Street, Numbers 9 through 16 on the calendar.

16         THE COURT:  All right.  Thank you.  Let's see, do we

17  still have everyone?  I think so.  People are popping up and

18  popping in.  There we are.

19         Thank you.  Thank you for your good efforts and also

20  for your patience as we finished that last matter.

21         Mr. Nutovic, for the debtor, can you bring the Court

22  up to date as to how you have been able to proceed with respect

23  to addressing the parties' respective requests for some

24  additional discovery before we have our evidentiary hearing on

25  the motion to dismiss.  Mr. Nutovic.

1          MR. NUTOVIC:  Good afternoon, Judge.  Isaac Nutovic.

2    I am happy to report we have reached agreements on the

3    following items.  All discovery, additional discovery requests

4    to be served no later than July 26th.

5          Responses by the parties, now we're talking about

6    parties and non-parties, but responses by the parties to

7    document requests by August 14th.

8          THE COURT:  And is that substantive production

9    responses as well as objections and things I assume?

10          MR. NUTOVIC:  That's correct, Your Honor.

11          THE COURT:  And say again that date.  I'm sorry.

12          MR. NUTOVIC:  August 14.

13          THE COURT:  Thank you.  I apologize for the

14    interruption.  Back to you.

15          MR. NUTOVIC:  And then an outside cutoff date of

16    September 26th which would be subject to each party coming

17    forward and asking to extend service based upon difficulties,

18    well based on anything, but we are anticipating there may be

19    difficulties with some non-party witnesses that might occasion

20    the request for an extension of time.

21          THE COURT:  And when would we then have, so, all

22    requests served, both sides, by July 26th, party responses

23    August 14th, all discovery, all of the supplemental discovery

24    on the motion to dismiss complete September 26th, amended --

25    this may change what's agreed and not agreed and what's

1  contested and not contested.  Hopefully it will put more into

2  the not contested category, but we'll see what we see.  Amended

3  pre-hearing statement by when?

4          MR. NUTOVIC:  That was not something that we had

5  discussed, Judge.  I think maybe we should come back to see

6  where we are shortly after September 26th.

7          THE COURT:  I can see how that could make good sense.

8          Mr. Teele, let me hear from you.  Do these dates

9  sound right?

10          MR. TEELE:  That's Mr. Nutovic reciting exactly what

11  we discussed and we agreed to.  I think all of us didn't think

12  about the pretrial statement, but I think Mr. Nutovic's

13  suggestion is a good one to come back very shortly after

14  September 26th.

15          THE COURT:  Okay.

16          MR. TEELE:  When we set a date for submitting that

17  then perhaps we can talk about a certain date at that point.

18          THE COURT:  Works for me.  I'm looking at October

19  10th as a day that would work at 10:30 we have Chapter 11s.

20          MR. NUTOVIC:  Your Honor, if we're doing that I just

21  have to check the Jewish holidays.  I'm not up on that just

22  yet.

23          THE COURT:  Yom Kippur begins sunset of the 11th, if

24  I've got this right.  And we try very hard to get it right.

25  But you tell me.  So it would be after Rosh Hashana, before Yom

1  Kippur, but in the Rosh Hashana/Yom Kippur time frame.  If

2  that's acceptable.

3          MR. NUTOVIC:  Okay.  So, we'll be back then just for

4  a hearing on the 10th and we're saying that the 11th is, the

5  evening of the 11th is the Yom Kippur?

6          THE COURT:  Is, yes, eve of Yom Kippur and then the

7  day of it.

8          MS. KELMAN:  Yeah, I think that tracks with my

9  calendar.

10         MR. NUTOVIC:  Okay.

11         MS. KELMAN:  Friday night the 11th is ere of Yom

12 Kippur.  So Thursday the 10th is the date the Court is

13 proposing.

14         MR. NUTOVIC:  Yeah, I don't think that should be a

15 problem then, Judge.

16         THE COURT:  Okay, good.  Good.  And thank you, Ms.

17 Kelman.

18         All right.  So, and then at that point we would make

19 the plan for the filing and stuff.  Good.  But we have more

20 work to do and more plans to set.  That would be also our case

21 management date, so I can note that, as well.  10/10 at 10:30.

22         MR. NUTOVIC:  Judge, if you would have made it 10/10

23 at 10 that would have been very unusual.

24         THE COURT:  I know.  I thought about it.  Gosh, it

25 was tempting.

1          And then motion to compel marked off without

2   prejudice.

3          I think we still need to speak with Ms. Kelman about

4   her circumstances and situation knowing her client's concerns.

5          Let me just mark the matters that we have.  I am up

6   to pretrial conference and the motions.  Every time I prepare

7   for these hearings, Ms. Kelman, I am reminded that you have

8   motions out there, but that they're in the adversaries, and the

9   adversaries are kind of trailing behind in a way the question

10  of dismissal of the case.  What can we do, what else can we do

11  today to help move these matters forward in the most productive

12  way?  Ms. Kelman, let me hear from you.

13         MS. KELMAN:  From my perspective I'm okay to sit

14  tight until the Court addresses the main bankruptcy action and

15  rules on a motion.  I was just responding to the letters filed

16  by the debtor, the letter.

17         THE COURT:  Got it.  I'm so grateful.

18         MS. KELMAN:  I wasn't affirmatively raising any

19  concerns.  I was just responding.

20         THE COURT:  What a pleasure to hear that.  Thank you

21  very much.  All right.  This has been a long day and a long

22  week so I'm delighted to know that as to all these matters,

23  eager as I am to move everything along substantively, I would

24  adjourn them as well to 10/10 at 10:30.  Does that work?

25         MS. KELMAN:  Works for me.

1          THE COURT:  So, I can say --

2          MR. NUTOVIC:  Well, Your Honor, we had --

3          THE COURT:  Yes.

4          MR. NUTOVIC:  It's Isaac Nutovic speaking, Your

5  Honor.  I had submitted a joint letter seeking additional

6  discovery from Old Republic.  We do understand the procedural

7  posture of the matter, but both Basis and the debtor believe

8  that if we got some more information from Old Republic it might

9  make it easier for us to be able to settle the case because not

10 having the substantive information regarding how Old Republic

11 handled this claim, we are assuming that everybody assumes the

12 case may be stronger than it is, and it just makes it a little

13 harder to settle.  And that forms the basis of the request to

14 Your Honor.

15         We have tried mediation.  It got shut down very

16 quickly.  And I know that Your Honor had on the previous

17 occasion scheduled, or wanted to schedule, a settlement

18 conference before you, which I'm still in favor of because I

19 think that the mediation worked out poorly, and somebody a

20 little stronger might help bridge the gap between the parties.

21         So, in the vein of still trying to settle, we'd like

22 to get some more information from Ms. Kelman and I want to

23 renew the request for a settlement conference.

24         THE COURT:  So --

25         MR. NUTOVIC:  And I think Mr. Duckstein probably

1  wants to weigh in on the subject, as well.

2          THE COURT:  All right.  Let's hear from -- thank you,

3  Mr. Nutovic.  Let's hear from Mr. Duckstein.  And we'll hear

4  from everyone else as well who wishes to be heard from.  So who

5  would be next?  Mr. Duckstein?  There we are.

6          MR. DUCKSTEIN:  Yes, this is Mark Duckstein, Your

7  Honor.  Thank you.

8          Yes, I agree with Mr. Nutovic.  I certainly

9  understand Ms. Kelman's arguments about the motion being

10 pending and possibly being dispositive or (indiscernible).

11         But in addition to what Mr. Nutovic said which is it

12 really is impossible for our side, our being Basis and the

13 debtor, to properly analyze the case for settlement purposes

14 without having the information that Mr. Nutovic talked about

15 and that is the files that show what the insurance company did

16 in deciding how to handle the claim.

17         As you may recall from the motion, the central issue

18 is whether the insurance company acted with reasonable

19 diligence.  So, without knowing what they did, when they did

20 it, why they did it, what they considered but didn't do, et

21 cetera, we really can't fully evaluate what their position is.

22         And I also note that we did -- Your Honor may recall

23 that we had served discovery on Old Republic, document demands,

24 and they actually were provided copies.  They were doing it on

25 a rolling basis and they did produce substantial information.

1      What happened was it was not being completed and we

2 weren't getting any information about when Old Republic

3 expected to complete it and how far along in the process did

4 they -- had they gone at that time.

5      So, we wrote a letter to Your Honor asking I think it

6 was to set a date by which the discovery, the document

7 production had to be complete, we were asking for a conference

8 or something like that.

9      And the end result, it backfired on us, the end

10 result was Your Honor said well wait a second, don't do

11 discovery until I have the conference and issue a discovery

12 order and then they stopped.

13      So, they are somewhat through the process.  We don't

14 think it's a very significant expense.  We're just asking for

15 copies of their claim file.  I don't know why it would take a

16 lot of time and effort to do.

17      But the other thing that we're asking, we're asking

18 for is, while we appreciate Old Republic's position, it's been

19 awhile that we've been litigating this case and we'd like to

20 have this issue proceed parallel with everything else because

21 it really is the most, in my view, it's the most significant,

22 it's a contingent asset, but it's a very, very significant

23 claim for the debtor, it's a very significant claim for my

24 client.

25      And it is very possible that either we could settle

1 it or if we're successful on that claim it could go a long way

2 to resolving a lot of the bankruptcy issues that are also

3 before the Court and we'd just like to proceed on parallel

4 tracks, at least for document production.

5 　　　　You know we could revisit the issue, if that ever

6 gets completed and we're talking about depositions, we could

7 revisit it.  But we think that it (indiscernible) we'd like to

8 finish getting copies of their claim file.

9 　　　　THE COURT:  Mr. Duckstein, at the beginning you

10 referred to a Court and how something got shut down.  Was that

11 this Court?

12 　　　　MR. DUCKSTEIN:  Yeah.  I think what happened was,

13 it's going back a little while, but we raised this issue.  We

14 weren't happy with the length of time that it was taking Old

15 Republic to complete the document production.

16 　　　　So, we raised this matter with Your Honor and the end

17 result of it I believe was Your Honor said well hold on, I

18 haven't held the discovery conference yet so I don't want --

19 they don't have to proceed with discovery.  And then at that

20 point Old Republic said okay, I'm not going to provide any more

21 documents.

22 　　　　THE COURT:  The record is what it is.  They also have

23 a motion to dismiss on file and I can more imagine that if you

24 were seeking party discovery from a party with that, that I

25 might have said, well, I think they're entitled to have me

1   decide their motion to dismiss.  And then I suppose you would

2   say yes, but even if you dismiss the claims against them, there

3   would still be non-party discovery.

4        I'm not sure that I fully grasp whatever how what is

5   in the claim file would affect your settlement negotiations.

6   I'm trying to imagine if it -- I'm trying to think about what

7   the hypothetical scenario would be and speculation on the

8   record is probably not appropriate.

9        Is there presently an, and I apologize for asking

10  questions, the answers to which I'm sure are in the record, but

11  is there presently pending a discovery request for the claim

12  file?

13       MR. DUCKSTEIN:  Your Honor, and I can't tell you the

14  entire scope of this, but generally that's the main aspect of

15  it.  I don't recall whether there was anything else to it.  But

16  it was we wanted the claim file and --

17       THE COURT:  Did you serve a request?

18       MR. DUCKSTEIN:  Yes.

19       THE COURT:  Okay.  And it's on hold because of the

20  status.  Have you gotten any response, document production

21  response?

22       MR. DUCKSTEIN:  Yes.  Yes.  There was a significant

23  document production response, I can't tell you the volume, but

24  it was quite large.  And we ended up having an issue because it

25  was taking a long time and we weren't getting any information

1   from Old Republic as to when they expected to finish or how far
2   along they were.

3        So, we wrote a letter to the Court to bring this
4   issue before Your Honor and the end result of it was that
5   discovery effort was put on hold because of defendant's, well,
6   I think it was because Your Honor said that there shouldn't be
7   discovery until Your Honor held the discovery conference.  So
8   that's where it left off.

9        THE COURT:  It's conceivable but that would not be a
10  typical observation from me.  But you know I have a lot of
11  cases and I don't pretend to recall them all even you know in
12  that kind of granular detail.

13       It looks like there is a July 11th letter that I,
14  because we've covered a lot of ground here, I read to prepare
15  for, I read this morning or maybe even took it home last night
16  and on, it looks like in early January of this year there was a
17  direction by the Court that the parties would file letters
18  stating the parties' agreement as to the scope of production by
19  January 5th, submit a confidentiality stipulation for the
20  Court's review by January 17th, two weeks later, and we entered
21  that confidentiality stipulation on January 23rd so.

22       MS. KELMAN:  Your Honor, I think that had to do with
23  the main bankruptcy case.  I don't think that had to do with
24  the adversary proceeding.

25       THE COURT:  All right.  And that is in the main case,

1  you're correct.  So, Ms. Kelman, I'll let you respond.  If I

2  need to --

3          MS. KELMAN:  Yeah, I'd like to do that.

4          THE COURT:  If I need to --

5          MS. KELMAN:  I'd like to do that.

6          THE COURT:  Of course.  And if I need to, this may be

7  just a question of my not having focused on this issue among

8  the many issues that the parties have --

9          MS. KELMAN:  Sure.  I -- if I go back in time.

10          THE COURT:  -- as well as I should have to prepare

11  for today.  But it's discovery, my friends, you should be able,

12  we should be able to work through this.  All right.

13          MS. KELMAN:  So, when we have --

14          THE COURT:  Over to you, Ms. Kelman.

15          MS. KELMAN:  Okay.  I apologize, Judge.  So Basis did

16  serve discovery back in September, approximately September of

17  last year.  Excuse me one second.  I have -- I'm sorry, Judge.

18  All my children came home in the interim since we started this

19  at 12:30.

20          So, in early, in the fall of last year Basis served

21  discovery demands.  We did start to produce discovery.  We

22  produced a substantial amount of discovery.  But Basis was

23  being very aggressive about tell us when, tell us how much,

24  tell us now, tell us tomorrow, when are you going to be done,

25  there's not enough, not quick enough.

1            And they wrote a letter to the Court asking for a

2    conference and we came before the Court in a conference and I

3    had the stage and I said to the Court look, Judge, we have two

4    motions to dismiss pending, we have Basis' motion to dismiss

5    the bankruptcy pending.  It doesn't make sense to get ahead of

6    our skis with this discovery because as we preached, and I

7    don't need to belabor this point, we don't think any of these

8    parties have valid claims against us.

9            And that sort of ties into Mr. Duckstein's argument

10   about settling this case.  They want documents from us so that

11   they could try to advance their settlement analysis when we

12   have motions to dismiss pending.  It's like an ulterior purpose

13   to get the documents, not to do discovery in a pending case.

14           And I just think that nothing has changed since we

15   had a hearing before this Court in January of this year and all

16   of these issues were argued back and forth with the Court and

17   the Court agreed with me and said that it was sensible to get

18   the motions to dismiss decided and get the main bankruptcy

19   dismissal motion decided before the adversary proceeding

20   proceeded with discovery.

21           THE COURT:  But you would agree that non-party

22   discovery is part of a process from time to time.  Just to help

23   me understand the parameters of the issue, there is a pending

24   discovery request.  There is neither a motion to compel nor a

25   motion to quash that I'm aware of, and that's fine, it's good

1    actually.

2            But how much would be involved and what time table

3    would be reasonable to complete the response just as a point of

4    information?

5            MS. KELMAN:  Right.  So, there is no non-party

6    discovery pending and there are no motions pending concerning

7    discovery.  I haven't gone back into the documents and the

8    status of the document production since I would say January

9    because that was the last time we made, you know, this issue

10   came before the Court.

11           I do think it is substantial work to do discovery in

12   this case because counsel and outside counsel was involved in

13   the claims handling because there are privilege issues

14   obviously and a lot of correspondence with my office.  And so,

15   you know, we have to cull for privilege and do privilege

16   review.

17           I think a substantial portion of the file has already

18   been produced and, you know, Basis is arguing that they need to

19   know what happened.  They were intimately, them and their

20   counsel were intimately involved in the claims process so to me

21   it's a little bit -- I don't buy it.

22           But, regardless, you know, it's hard for me to say

23   before today exactly how much time we would need to complete

24   discovery, but we would definitely ask the Court for 30 to 60

25   days to complete discovery if the Court were to determine that

1 it was appropriate to continue discovery.

2          The reluctance was that we didn't want to be in a

3 position where we produced documents and then we set a schedule

4 for non-party discovery and depositions and all of this but we

5 don't even know the scope of the case because the Court hasn't

6 rule.

7          THE COURT:  Well it's hard.  I wonder if a limited

8 request of the claim file would necessarily raise all those

9 same issues as to the outer parameters of discovery.  It

10 happens from time to time that objections are asserted and

11 production is made of documents not objected to that are

12 identified in a reasonable search of the apparently relevant

13 files.

14          And, again, there's no motion before me.  It's been

15 six months I guess since we addressed this and we're not done

16 nor does it seem like we are going to be done with those

17 motions any time soon.  I've just set a schedule that has us

18 coming back in October.

19          So if -- if and to the extent that on January 3rd it

20 looked like we had some motions that were going to be

21 definitive as to whether Old Republic is a party or a non-party

22 and whether the bankruptcy case is going to continue or be

23 dismissed, the one thing we know is we don't know that yet and

24 we won't know it until, you know, I'm coming back on October

25 10th to set a date to file an amended statement.  So, we're

1  talking about months.

2         I think it would be helpful for the parties to confer

3  on what you're really looking for in those requests and what

4  would be involved in producing it and if there is a core set of

5  documents or information that would complete the production up

6  to a point with everyone reserving their rights and objections

7  and all the rest.  You know it may take less time to do it than

8  it does to talk about it.

9         You know the phrase a claim file comes up in all

10 kinds of discovery.  It sounds like it should be very

11 straightforward.  Just get that file.  Not so much I assume.

12        But is there a bounded way to approach that that

13 would be -- that would help us move forward?  You know, maybe

14 so.  I'm a little worried that you're not coming back until

15 October and October is, I guess is only three months away which

16 is hard to imagine.

17        So, do you think that's the kind of -- is there any

18 prospect that the parties could make progress on that or is

19 that just hopeless?  Ms. Kelman, I'll ask you first.  And then

20 we'll hear from Mr. Duckstein.

21        MS. KELMAN:  Well I don't want to lay blame on

22 anyone, but I think that the Court wouldn't be surprised if I

23 would say that I don't think that it's an appropriate use of

24 discovery and I don't think -- and I think that Basis' conduct

25 in this case has very much resulted where we are in many ways.

1           But to the point of Mr. Nutovic's comments about that

2    we went to mediation and you know we're still here and it was

3    contemplated that the Court would also hold a settlement

4    conference which we would be okay with as well at a future

5    date.

6           But all that set aside, I have no problem conferring

7    with Mr. Duckstein.  I do need time to go back and refresh

8    myself on the status and then I can talk to Mr. Duckstein and

9    then we can come back and see where we are.

10          THE COURT:  And I would say though pick the low-

11   hanging fruit, eliminate any issues.  I want to be sure I

12   understand what you mean by an inappropriate use because this

13   Court's not going to be part of a process that's using

14   discovery here for something else.  It's discovery 101 that

15   it's for purposes of the case and not for other purposes.  I

16   was a litigator at one point.  I have some general familiarity,

17   even though it was a long time ago, with that framework.

18          Ms. Kelman, what is the concern and let me think

19   about how we can address it when you say inappropriate.

20          MS. KELMAN:  Yeah.  Yeah, I think that the letter

21   that was submitted by the debtor on behalf of debtor and Basis

22   set the stage where they said that they know that we have our

23   motions pending but they think that if they could access Old

24   Republic's deep pockets they would, and I'm characterizing,

25   they didn't use these words, it would help resolve the

1 bankruptcy.  And I don't think that's an appropriate argument

2 or advocacy to this Court.

3        The bankruptcy Basis needs, you know, has the motion

4 pending and the Court is going to decide the merits of the

5 bankruptcy on its own right and the Court is going to decide

6 the pending motions to dismiss that Old Republic has filed on

7 their legal and factual merit and I just don't think that the

8 argument, we should get to arguments because we think that it

9 will shake some trees to either settle the case or aid in

10 resolution of the bankruptcy makes any sense.

11        MR. DUCKSTEIN:  Your Honor, could I respond?

12        MS. KELMAN:  If they want to clarify what they're

13 trying to say then -- I think what they're trying to do is they

14 think that it will change the settlement dynamic if we produce

15 documents, which I don't think is the case.

16        THE COURT:  Well let me ask this question and it's a

17 question you're familiar with because it's in my pre-hearing

18 statement.  What is the disputed issue of fact that this

19 discovery would go to?  Ms. Kelman is saying in substance look,

20 it's just pure leverage.

21        MR. DUCKSTEIN:  Your Honor.

22        THE COURT:  And my question is what is the disputed

23 issue of fact that this helps address?

24        MR. NUTOVIC:  May I address that?

25        THE COURT:  Mr. Duckstein first is the person.

1          MR. NUTOVIC:  This is Isaac Nutovic.  May I address
2  that?

3          THE COURT:  I'll put the question to Mr. Duckstein.
4  Let's hear from Mr. Duckstein and then, Mr. Nutovic, you can
5  follow-up.

6          MR. DUCKSTEIN:  Thank you, Your Honor.  The disputed
7  issue of fact is that the determination of the propriety of the
8  insurance company's position on the bonding title claims turns
9  on whether or not they acted with reasonable diligence in
10  handling the claims, both the Basis' claim and the debtor's
11  claim.  So, the problem that we have is --

12          THE COURT:  What do you mean by reasonable diligence,
13  do you mean how fast?

14          MR. DUCKSTEIN:  Well, it's not only how fast, it's
15  what they did, how they approached the claim.  Now one of the
16  issues that was raised in the motions is Old Republic says
17  well, you know, we had to take, you know, six months' period of
18  time to do an analysis as to the validity of certain issues
19  that were raised that potentially could have percolated into a
20  challenge as to the state of title and whether we needed to
21  file a quiet title action.

22          We say that's not so and we say that you did not
23  reasonably handle the claims with reasonable diligence.  It
24  took far too long.  It should have actually been resolved, at
25  least you should have filed a quiet title action within a very

1 brief period of time after the claims were filed.

2          So, that's a disputed issue of fact.  We need to know

3 what they did because there's a sense if you look back at the

4 motion papers it supported their --

5          THE COURT:  This would not inform the settlement

6 between Basis, if there ever is one, which I no longer view as

7 remotely likely I have to say, between Basis and the debtor,

8 this would be for you to take the measure of claims you might

9 assert against Old Republic, is that right?

10          MR. DUCKSTEIN:  Well, no.  I think Your Honor is not

11 appreciating the nature of the settlement discussions so.

12          THE COURT:  That's part of my job not to appreciate

13 the nature of those discussions to some extent I'm sure you

14 would agree.

15          MR. DUCKSTEIN:  Correct.  But as Your Honor will

16 recall, the way that we ended up before Your Honor with the

17 settlement conference and then ultimately mediation, it was

18 requested by Mr. Han on behalf of Riverside.  The prior

19 mediation that we were involved in I believe was initiated by

20 Old Republic.

21          And the way that the mediations have germinated is we

22 have essentially two sides.  We have Old Republic and Riverside

23 on one side and Basis and the debtor on the other side.  And

24 the mediation has been, and this is at the request of Old

25 Republic and Riverside, they're proposing one single sum of

1 money to settle the adversary proceeding claims that would then

2 be shared by Basis and the debtor in some amount that we, the

3 Basis and the debtor, come to an agreement on.

4        So, it's a global settlement and we, the debtor and

5 Basis, are at least at this juncture looking to the recovery

6 that we hope to get from the insurance company, whether through

7 the adversary proceeding or through a settlement, to address a

8 lot of the issues that are between Basis and the debtor.

9        And just for an example, if we were to prevail, we

10 meaning the debtor and Basis, on their adversary claims against

11 Old Republic, theoretically the entire bankruptcy could be

12 resolved because it's possible that all of the issues, the

13 claims that my client asserts against the debtor and the issues

14 that caused the debtor to file for bankruptcy in the first

15 place, would be alleviated by that recovery under the insurance

16 policy.

17        So, that's how the settlement, and it's not us and

18 Basis trying to just settle between ourselves, it's global and

19 we need the insurance company and Riverside's participation in

20 order to create the pool of settlement funds.

21        THE COURT:  So, when the parties went to mediation,

22 help me refresh or confirm my recollection, it was in the

23 context of a different action in a different court.  I don't --

24        MR. DUCKSTEIN:  No.  No this action.

25        THE COURT:  So, in the bankruptcy case or the

1  adversary proceeding?  Where is the mediation referral order in

2  this court?  I want to take a look at it.

3          MR. DUCKSTEIN:  (indiscernible) voluntarily

4  undertaken, but it was to address all of those claims, Your

5  Honor --

6          THE COURT:  I'm sorry, Mr. Duckstein, I missed the

7  beginning of that.

8          MR. DUCKSTEIN:  It was not a formal order.  It was

9  voluntarily agreed upon by the parties in an effort to resolve

10 all of the adversary -- it was really to resolve the adversary

11 proceeding claim.

12         THE COURT:  And wasn't it in furtherance of a process

13 that began separate from this court?

14         MR. DUCKSTEIN:  No.

15         MS. KELMAN:  Respectfully, that's not true.

16 Respectfully Mr. Han raised it because there was an order in

17 your State Court action in New Jersey to go to mediation.

18         THE COURT:  Yes.  I'm recalling it was a New Jersey

19 mediation directed by the Court there.  Is that not correct?

20         MR. HAN:  Well, Your Honor, if I may verify.  There

21 was a mediation order that was issued in the New Jersey action

22 between Basis and Riverside.  I thereafter and I forgot which

23 hearing it was, I thereafter came before Your Honor and

24 suggested we have a judicial settlement conference because we

25 thought, I believe that Your Honor will be helpful, incredibly

1    helpful in getting the, you know, the gap, bridge the gap.

2          During that discussion the parties decided

3    voluntarily to go back to private mediation to attempt to

4    settle the case and come back to Your Honor for a judicial

5    settlement conference as a backstop.  But we did --

6          THE COURT:  And when you say go back to it, what was

7    the history or the origin of the prior mediation process, Mr.

8    Han?

9          MR. HAN:  (indiscernible) -- I mean, I think it was

10   sort of we were all discussing settlement last year about --

11   just about this time.  And I know it involved Mr. Duckstein's

12   colleague Bob Hempstead was, you know, sort of pushed in his

13   view, and we all agreed to go before a private mediator in New

14   Jersey.  And then we went back to him a couple weeks ago, but

15   it was not -- we did not make much progress, Your Honor.

16         THE COURT:  And do you think there's still a prospect

17   for progress?

18         MR. HAN:  I believe so and if I may I think largely

19   the big issue in our view is the legal fee claim from Basis.

20   So, I believe there is.  If that can be addressed I think that

21   we can, we may be able to reach a settlement.  But that's just

22   our view.  I'm sure Mr. Duckstein and Mr. Teele and Kopacz have

23   a different view.  But as I said to them before in an e-mail,

24   that we're always hoping, I'm hopeful for settlement

25   discussion, but I think there are some numbers that we just do

1  not understand how it's compiled (indiscernible) and I think

2  that's a big hurdle in getting a settlement, you know, reaching

3  a settlement.

4         THE COURT:  You know it happens sometimes that the

5  parties are done but there's an attorneys fee issue which can

6  be a question of -- which can get complicated because of course

7  then you have someone at the table who is in effect both agent

8  and principal.  I'll say again it's complicated.

9         I am really struggling with whether and to what

10 extent to direct the parties to work on that, to invest the

11 parties' time in that.  It's about a lot more than just could

12 we get that discovery from in effect non-party Old Republic.

13 And your explanations are extremely helpful.  It would be to

14 bring Old Republic more into a process and their response has

15 been we have pending dispositive motions so it's a balancing

16 act.

17         In a way if you hadn't been there already I would say

18 it cries out for mediation, it cries out for someone who can

19 say yes, you can spend, you can run up those fees even more.

20 And I do note that we have, Basis is very well represented, we

21 have, what, four attorneys from -- I assume you're all

22 partners, we have a lot here for Basis, and that's good.

23 That's means all the bases are covered.  But I guess I'm not

24 surprised that a lawyer's fee could be an issue in that

25 setting.  I don't often see four partners representing one

1 party in a case.  It's up to you.  No one told me how to staff

2 my cases at Wilkie Farr and I'm not telling you how to staff

3 yours.

4        But you would think it cries out for a resolution and

5 instead I'm giving you a deadline for discovery and briefing

6 and setting an evidentiary hearing because I have to say at

7 this point I have really lost any hope that there was a

8 possibility of going down that path productively in this case.

9 And it takes a lot for me to lose hope on that point as parties

10 who appear before me know.  That's a thing with me to try to

11 help solve problems.  The easiest part of my job is making

12 decisions it seems.

13        So, I'm trying to think what to do next.  I can say

14 well we've got a schedule, I'll see you on October 10th, and

15 I'm willing to be bolder than that.  I would be prepared to

16 refer you in a fresh way to mediation if you think it could

17 possibly make sense.  You know you'd be paying to get another

18 mediator up to speed and you, I guess you've tried that and it

19 sounds like you even went back recently and it didn't go

20 anywhere so.

21        MR. HAN:  Well, Your Honor, if I may also.  There was

22 some disagreement amongst the parties on whether to go back to

23 the same New Jersey State Court mediator or to have someone

24 fresh and a different set of eyes.

25        THE COURT:  All right.

1          MR. HAN:  Some of us have (indiscernible) another

2     mediator perhaps with some bankruptcy experience.  You know,

3     Basis objected to that.  I think Mr. Nutovic was also on board

4     with that approach and Ms. Kelman.

5          But, again, to make to -- you know, to try to seek, I

6     guess to seek really for settlement we went back and forth.  We

7     followed Mr. Duckstein and Basis' suggestion and went back to

8     the State Court mediator, and we just didn't -- we didn't make

9     much progress so.

10          THE COURT:  All right.

11          MR. NUTOVIC:  Your Honor, Isaac Nutovic here.

12          THE COURT:  Yes, Mr. Nutovic, let me hear from you,

13     please.

14          MR. NUTOVIC:  Yes, (indiscernible) mediator advisor,

15     but I did not want to drive the bus on this subject and prevent

16     another round of mediation over that issue, but I still believe

17     that --

18          THE COURT:  I'm sorry.  Over which issue?

19          MR. NUTOVIC:  Over the issue of who the appropriate

20     mediator would be.

21          THE COURT:  Oh, okay.

22          MR. NUTOVIC:  The parties agreed to go to mediation a

23     second time, and I did feel that we needed somebody else.  I

24     did feel that somebody with an understanding of bankruptcy

25     issues might be better but -- and I still feel that way and I

48

1  would still like to encourage further settlement opportunities,

2  recognizing that the parties are still quite far apart.

3          THE COURT:  All right.  Ms. Kelman, may I have your

4  thoughts on this sort of alternative parallel possible path,

5  sorry about the alliteration, forward in the spirit of 10/10 at

6  10?

7          MS. KELMAN:  For mediation?

8          THE COURT:  Yes.

9          MS. KELMAN:  On mediation?

10          THE COURT:  Yes.

11          MS. KELMAN:  We were in mediation with Judge Ciuffani

12  ten days ago.  It did not take at all.  You know, I took a

13  little bit of umbridge to some of the things that counsel said

14  happened at mediation about -- I don't want to delve too deeply

15  into what happened at mediation, I don't think it's

16  appropriate, and representations that were made about

17  (indiscernible) alignment and things like that.  But I'll just

18  reserve my rights.  But I don't agree necessarily with those

19  statements made by Mr. Duckstein but I don't think I need to go

20  into it.

21          And so, I don't think that Judge Ciuffani is

22  particularly effective in our case and we did also have an

23  interest in going to somebody else.  But be that as it may, we

24  were there ten days ago and it didn't take.  So if Your Honor

25  wants to hold a judicial settlement conference I think that

1  parties would be interested in that.

2          THE COURT:  I'll do that.  I mean the problem is I'm

3  going to make a lot of decisions in your case, too, so I would

4  have to have explicit consent.  Of course, I mean, I can order

5  it, but I would need it to be a request by all of the parties

6  and I guess you could file that on the docket.  And I will do

7  my very best to be promptly responsive.

8          I have some days that I didn't expect to have coming

9  up relatively soon in my calendar unless something changes.

10  And I guess the one thing I can count on these days is that

11  everything changes.  But if everyone requests that, I would

12  consider it.  It would be in person, my friends.  That's a

13  thing.  And is that something you'd like the opportunity to

14  consider?

15          MR. NUTOVIC:  Your Honor, Isaac Nutovic speaking for

16  the debtor.  I know that we had previously consented to it.

17          THE COURT:  Okay.

18          UNIDENTIFIED ATTORNEY:  Your Honor, (indiscernible)

19  it was my suggestion (indiscernible) and we still would like

20  that.

21          THE COURT:  Well I do have a very good hourly rate,

22  don't I?  And I get that.  Sometimes people will say very

23  gracious and lovely things about how wonderful it would be and

24  then someone will finally let it slip that the point is that,

25  you know, a judicial mediator is free.

1         So, I want you to confirm on yourselves if you file a

2    letter indicating that everyone is requesting this, I will do

3    my best to be promptly responsive and to bring you all in.  And

4    I won't change any of these other dates unless it makes sense

5    to everyone including me to do so.

6         And just as a question, I don't even know if I should

7    put a hypothetical date out there.  It has been a great, this

8    is personal, it's been a great happiness to hear that all the

9    things that people used to do in August they're doing again.

10   There is family travel and there is family events and people

11   are doing camp visits and stuff.

12        I have had unexpectedly the 5th and 6th of August, it

13   looks like they're coming back into my calendar because another

14   aspect of my schedule changed in an unexpected way.  So those

15   would be two days that you could also take a look at, I think.

16   At least for the moment.

17        MR. CADIGAN:  Your Honor, this is Rich Cadigan from

18   Basis.  If I can speak.  I'm sure counsel is going to confer

19   with us, but since the client is on the phone, I can tell you

20   with all due respect that we're not interested in the

21   settlement conference.

22        THE COURT:  Okay.

23        MR. CADIGAN:  I don't think it's going to be

24   productive (indiscernible).

25        THE COURT:  All right.  So, there won't be a request.

1  I mean you all need to talk, but I won't do it unless it's at

2  everybody's -- I don't think it's appropriate to do it unless

3  it's at everybody's request.  Although for the avoidance of

4  doubt I can direct it as you know.

5         So, anyway, well, you've given me some things to

6  think about.  You've got some things to think about.  I'm going

7  to carry the matters to October 10th and just because it's

8  probably a good idea, let's summarize what they are.  Case

9  management October 10th and you've got directions to get some

10  things done by July 19th.  I'm going to carry the disclosure

11  statement hearing to that date.  Some day I really hope to be

12  confirming or to be approving your disclosure statement.

13  That's not today.

14         The motion to compel documents has been marked off

15  without prejudice.  That's so ordered.

16         The motion to dismiss.  You have discovery requests

17  to be served by July 26th, party responses August 14th, and all

18  discovery complete by September 26th subject to any request to

19  adjust that, perhaps to accommodate an unexpected schedule

20  issue for a non-party witness.  And I get that, they're not

21  here, so they can't tell us whether that works for them.  We

22  don't even know who they are.

23         Then we have the pretrial conference October 10th.

24  We have the pretrial conference in the next adversary, this is

25  22-1045 and 22-1089.  And the motions that we're carrying for

1  all the reasons we have discussed in enormous detail.  And

2  that's it.

3          Keep in touch.  If it's helpful to have a continued

4  conference, reach out to Ms. Jackson, I'll schedule it as

5  promptly as I can to meet your needs.  And I really want to

6  help in any way I can to move this matter forward in the most

7  productive, least burdensome way to the parties, all right?

8          Thank you.  Thank you, everybody.  Okay.  Take care.

9          UNIDENTIFIED ATTORNEY:  Thank you, Judge.

10          THE COURT:  Be well.

11          THE ATTORNEYS:  Thank you, Your Honor.

12          THE COURT:  Bye-bye.

13                    * * * * *

14          **C E R T I F I C A T I O N**

15          I, JANET D. PERSONS, court approved transcriber,

16  certify that the foregoing is a correct transcript from the

17  official electronic sound recording of the proceedings in the

18  above-entitled matter, and to the best of my ability.

19

20  /s/ Janet D. Persons

21  JANET D. PERSONS

22  J&J COURT TRANSCRIBERS, INC.    DATE:  July 29, 2024

23

24

25